1

2

3

4

5

6

7

8

9

10          **IN THE UNITED STATES DISTRICT COURT**

11          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13    EVEREST NATIONAL INSURANCE              CASE NO. CV F 08-1695 LJO GSA
      COMPANY,
14                                            **SUMMARY ADJUDICATION DECISION**
                          Plaintiff,          (Doc. 13.)
15          vs.

16    VALLEY FLOORING SPECIALTIES,

17                          Defendant.
                                        /
18

19    AND RELATED COUNTERACTION.

20                                        /

21

22                          **INTRODUCTION**

23          In this insurance coverage dispute, plaintiff-counterdefendant Everest National Insurance

24    Company ("Everest") seeks this Court's declaration that Everest owes no duty to defend its insured

25    defendant-counterclaimant Valley Flooring Specialties, Inc. ("Valley Flooring") against claims by Valley

26    Flooring's employee in an underlying action. Everest furthers seeks summary adjudication on Valley

27    Flooring's bad faith insurance counterclaim arising from Everest's treatment of the employee's

28    underlying action. Everest contends that its policy excludes coverage for the employee's claims against

                                              1

1   Valley Flooring to entitle Everest to requested declaratory relief and summary adjudication on Valley

2   Flooring's bad faith counterclaim.  Valley Flooring filed no timely papers to oppose summary

3   adjudication.  This Court considered Everest's summary adjudication motion on the record[1] and

4   VACATES the April 27, 2009 hearing, pursuant to Local Rule 78-230(c), (h).  For the reasons discussed

5   below, this Court GRANTS Everest summary adjudication that it owes no duty to defend Valley

6   Flooring regarding the underlying action and FURTHER GRANTS Everest summary adjudication on

7   Valley Flooring's bad faith counterclaim.

8                                                    **BACKGROUND**

9                                           **Underlying Job Injury**

10          On May 25, 2006 when at work, Valley Flooring employee Octavio Lopez ("Mr. Lopez") caught

11   his left arm in a baler machine to require amputation above his elbow.  On June 1, 2006, Mr. Lopez filed

12   a workers' compensation claim with the Workers' Compensation Appeals Board.

13          Everest had issued to Valley Flooring a Standard Workers Compensation and Employers

14   Liability Policy ("policy") which was effective at the time of Mr. Lopez' injury.  Valley Flooring

15   tendered Mr. Lopez' workers' compensation claim to Valley Flooring, which has covered the claim

16   under the policy's Part One, Workers Compensation.

17                                **Mr. Lopez' Underlying State Court Action**

18          On May 16, 2007, Mr. Lopez and his wife (collectively the "Lopezes") filed a Fresno County

19   Superior Court action ("Lopez action") against Valley Flooring to allege a California Labor Code section

20   4558 ("section 4558") claim that Mr. Lopez' injury was proximately caused by Valley Flooring's

21   "knowing removal of or knowing failure to install the point of operation guard" to the baler machine.

22   The Lopezes seek to recover damages, including medical expenses, lost income and future earning

23   capacity, loss of consortium, and pain and suffering.  Everest characterizes the "underlying injury" at

24   issue in the Lopez action as "the same injury for which Mr. Lopez is already receiving workers'

25

26          [1]     In absence of Valley Flooring's timely opposition, this Court carefully reviewed and considered the entire
     record to determine whether Everest's summary adjudication motion is well supported.  Omission of reference to an argument,
27   document, or paper is not to be construed to the effect that this Court did not consider the argument, document or paper.  This
     Court thoroughly reviewed, considered and applied the evidence which it deemed admissible, material and appropriate for
28   summary adjudication.

1  compensation benefits."[2]

2  Section 4458(b) permits an employee, or his/her dependents in the event of the employee's death,

3  to "bring an action at law for damages against the employer where the employee's injury or death is

4  proximately caused by the employer's **knowing removal of, or knowing failure to install**, a point of

5  operation guard on a power press, and this removal or failure to install is specifically authorized by the

6  employer under conditions known by the employer to create a probability of serious injury or death."

7  (Bold added.)

8  Valley Flooring tendered to Everest defense of the Lopez action under the policy's Part Two,

9  Employers Liability Insurance.  Everest initially declined coverage but has provided Valley Flooring

10  with a defense of the Lopez action under a full reservation of rights.

11  <u>**The Policy's Employer's Liability Insurance And Exclusions**</u>

12  Everest points to the policy's following coverage and exclusions for employer's liability

13  insurance:

14  **A.    How This Insurance Applies**

15  This employers liability insurance applies to bodily injury by accident or bodily
   injury by disease.  Bodily injury includes resulting death.
16

17  1.    The bodily injury must arise out of and in the course of the injured
         employee's employment by you.

18  2.    The employment must be necessary or incidental to your work in a state
         or territory listed in Item 3.A. of the Information Page.
19

20  3.    Bodily injury by accident must occur during the policy period.

21  4.    Bodily injury by disease must be caused or aggravated by the conditions
         or your employment.  The employee's last day of last exposure to the
         conditions causing or aggravating such bodily injury by disease must
22       occur during the policy period.

23  5.    If you are sued, the original suit and any related legal actions for damages
         for bodily injury by accident or by disease must be brought in the United
24       States of America, its territories or possessions, or Canada.

25  **B.    We Will Pay**

26  We will pay all sums you legally must pay as damages because of bodily injury

27  _____

28  [2]    Everest notes that alleged damages of Mr. Lopez' wife "also arise from the same injury to her husband"
   subject to his workers' compensation claim.

to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is provided by law, include damages:

1.      for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2.      for care and loss of services; and

3.      for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4.      because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**C.    Exclusions**

This insurance does not cover:

. . .

3.      bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4.      any obligation imposed by workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5.      bodily injury intentionally caused or aggravated by you;

. . .

**D.    We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance.  We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. . . .  (Bold in original.)

Everest notes that the policy's text is set in consistent size and density and all its headings, including "Exclusions," are in bold.

### The Parties' Claims

Everest proceeds on its original complaint to seek declaratory relief that:

4

1          1.       Everest lacks a duty to defend Valley Flooring as to the Lopez action;

2          2.       Valley Flooring is obligated to reimburse Everest for all attorney fees and costs paid by

3                    Everest to defend the Lopez action;

4          3.       Everest lacks a duty to indemnify Valley Flooring as to the Lopez action.

5          In its counterclaim, Valley Flooring alleges that Everest owes duties to defend and indemnify the

6  Lopez action and has breached the policy's covenant of good faith and fair dealing.

7          Everest seeks summary adjudication that it lacks a duty to defend the Lopez action and has not

8  acted in bad faith in that it had no duty to defend Valley Flooring under the policy and thus in turn did

9  not as a matter of law breach the policy's implied covenant of good faith and fair dealing.

10                                        **DISCUSSION**

11                          **Summary Judgment/Adjudication Standards**

12         F.R.Civ.P. 56(a) allows a "party claiming relief" to seek "summary judgment on all or part of the

13 claim." F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on

14 all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine

15 issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law.

16 F.R.Civ.P. 56(c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356

17 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The

18 purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to

19 see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348;

20 *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

21         On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to

22 any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c);

23 *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress &*

24 *Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467,

25 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir.

26 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and all

27 reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the

28 opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita,*

1    475 U.S. at 587, 106 S.Ct. 1348.  The inquiry is "whether the evidence presents a sufficient disagreement

2    to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

3    law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

4           To carry its burden of production on summary judgment/adjudication, a moving party "must either

5    produce evidence negating an essential element of the nonmoving party's claim or defense or show that

6    the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden

7    of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th

8    Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.

9    1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the

10   court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*,

11   895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material.  Only

12   disputes over facts that might affect the outcome of the suit under the governing law will properly

13   preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

14          "If a moving party fails to carry its initial burden of production, the nonmoving party has no

15   obligation to produce anything, even if the nonmoving party would have the ultimate burden of

16   persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

17   "If, however, a moving party carries its burden of production, the nonmoving party must produce

18   evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

19   at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

20   fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

21   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of

22   summary judgment, after adequate time for discovery and upon motion, against a party who fails to make

23   the showing sufficient to establish the existence of an element essential to that party's case, and on which

24   that party will bear the burden of proof at trial.  In such a situation, there can be no 'genuine issue as to

25   any material fact,' since complete failure of proof concerning an essential element of the nonmoving

26   party's case necessarily renders all other facts immaterial.")

27          F.R.Civ.P. 56(e)(2) requires a party opposing summary judgment to "set out specific facts

28   showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should,

1    if appropriate, be entered against that party." "In the absence of specific facts, as opposed to allegations,

2    showing the existence of a genuine issue for trial, a properly supported summary judgment motion will

3    be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).  When

4    a summary judgment motion is unopposed, a court must "determine whether summary judgment is

5    appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of

6    law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990).   A court

7    "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather

8    must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d

9    1099, 1101 (11th Cir. 2004).  A court "need not sua sponte review all of the evidentiary materials on file

10   at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary

11   materials." *One Piece of Real Property*, 363 F.3d at 1101.

12          Under F.R.Civ.P. 56(d)(1), a summary judgment/adjudication motion, interlocutory in character,

13   may be rendered on the issue of liability alone.  "In cases that involve . . . multiple causes of action,

14   summary judgment may be proper as to some causes of action but not as to others, or as to some issues

15   but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123

16   (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner*

17   *Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989).  A court "may grant summary adjudication

18   as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp.

19   1051, 1055 (S.D. Cal. 1977).

20          As discussed below, Everest has shown that a policy exclusion excuses its duty to defend the

21   Lopez action and that it did not act in bad faith.

22                                          **Employer's Liability Insurance**

23          Everest's policy contains workers' compensation and employer's liability components. Workers'

24   compensation policies generally contain two types of coverage: (1) workers' compensation insurance [part

25   1 of Everest's policy], "under which the insurer agrees to pay all workers' compensation and other

26   benefits that the employer must legally provide to covered employees who are occupationally injured or

27   disabled"; and (2) optional employer's liability insurance [part 2 of Everest's policy]. *La Jolla Beach &*

28   *Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal.4th 27, 36, 36 Cal.Rptr.2d 100 (994).

1     The California Supreme Court has explained the effect of employer's liability coverage:

2         . . . employers' liability insurance is traditionally written in conjunction with workers'
       compensation policies, and is intended to serve as a "gap-filler," providing protection to
3      the employer in those situations where the employee has a right to bring a tort action
       despite the provisions of the workers' compensation statute or the employee is not subject
4      to the workers' compensation law. . . . Generally, these two kinds of coverage are mutually
       exclusive. . . . Most employers' liability policies limit coverage to liability for which the
5      insured is held liable *as an employer.*

6   *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 916, 226 Cal.Rptr. 558 (1986) (citations

7   omitted; italics in original).

8                                    **Policy Interpretation**

9         Everest initially asks this Court to determine that exclusions it seeks to apply are unambiguous.

10        "An insurance policy provision is ambiguous when it is capable of two or more constructions both

11  of which are reasonable." *Suarez v. Life Ins. Co. of North America,* 206 Cal.App.3d 1396, 1402, 254

12  Cal.Rptr. 377 (1988) "Whether language in the policy is ambiguous is a question of law." *Reagen's*

13  *Vacuum Truck Service, Inc. v. Beaver Ins. Co.*, 31 Cal.App.4th 375, 383, 37 Cal.Rptr.2d 89 (1995).

14  "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none

15  exists." *Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800, 807, 180 Cal.Rptr. 628 (1982). "There cannot

16  be an ambiguity per se, i.e. an ambiguity unrelated to an application." *California State Auto. Assn.*

17  *Inter-Ins. Bureau v. Superior Court,* 177 Cal.App.3d 855, 859, n. 1, 223 Cal.Rptr. 246 (1986).   When

18  ambiguity is alleged to attempt to avoid summary judgment/adjudication, there must be "at least some

19  evidentiary support for competing interpretations of the contract's language." *Nat'l Union Fire Ins. Co.*

20  *of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).

21        Interpretation of an insurance policy is a question of law when determining whether a particular

22  policy provides coverage and a duty to defend. *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 18, 44

23  Cal.Rptr.2d 370 (1995); *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 818, 274 Cal.Rptr. 820 (1990);

24  *see Marquez Knolls Property Owners Assoc., Inc. v. Executive Risk Indemnity, Inc.*, 153 Cal.App.4th 228,

25  233-234, 62 Cal.Rptr.3d 510, 515-516 (2007) ("The interpretation of an exclusionary clause is an issue

26  of law subject to this court's independent determination."). "An insurance company has the right to limit

27  the coverage of a policy issued by it and when it has done so, the plain language of the limitation must

28  be respected." *National Ins. Underwriters v. Carter*, 17 Cal.3d 380, 386, 131 Cal.Rptr. 42 (1976)

1  (quoting *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 432, 296 P.2d 801 (1956)).

2  However, "the burden of bringing itself within any exculpatory clause contained in a policy is on the

3  insurer." *Executive Aviation, Inc. v. National Ins. Underwriters*, 16 Cal.App.3d 799, 806, 94 Cal.Rptr.

4  347 (1971); *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 880, 151 Cal.Rptr. 285 (1978).

5  "[E]xclusionary clauses are construed narrowly against the insurer." *Marquez Knolls*, 153 Cal.App.4th

6  at 234, 62 Cal.Rptr.3d at 516.

7        With these policy interpretation standards in mind, this Court initially addresses whether the

8  exclusions which Everest seeks to invoke are ambiguous.

9                          ***Workers' Compensation Exclusion***

10       The policy excludes from coverage "any obligation imposed by workers compensation,

11 occupational disease, unemployment compensation, or disability benefits law, or any similar law."

12 Everest contends that workers' compensation exclusion is unambiguous to exclude "the Lopez action

13 from coverage because the injury complained of in the Lopez action is eligible for workers' compensation

14 benefits and Everest has already extended Valley Flooring full rights and benefits afforded under the

15 workers' compensation coverage for the same injury."

16       Everest points to *Transamerica Ins. Co. v. Superior Court*, 29 Cal.App.4th 1705, 1715, 35

17 Cal.Rptr.2d 259 (1995), where the California Court of Appeal addressed a workers' compensation

18 exclusion in the employer's liability portion of a workers' compensation and employer's liability policy

19 and which provided no coverage "for any obligation for which the insured or any carrier as his insurer

20 may be held liable under any workers' compensation or occupational disease law . . ."  The Court of

21 Appeal explained that such exclusion "clearly indicates that where workers' compensation liability exists,

22 there is no coverage under the employer's liability portion of the policy, thereby affording only defense

23 and indemnity for the workers' compensation claim."  *Transamerica*, 29 Cal.App.4th at 1715, 35

24 Cal.Rptr.2d 259.  The Court of Appeal continued to note that "the policy in question here clearly provides

25 that when workers' compensation applies, no other coverage exists, leaving only coverage for defense

26 for the workers' compensation claim."  *Transamerica*, 29 Cal.App.4th at 1715, 35 Cal.Rptr.2d 259.

27       Everest points out that the policy's workers' compensation exclusion is "virtually identical" to

28 the counterpart exclusion in *Transamerica* and "is unambiguous and cannot be reasonably interpreted in

9

1  more than one way." Everest explains that the policy's workers' compensation exclusion "indicates there

2  is no coverage under the employers' liability portion of the policy for an injury where workers'

3  compensation liability for that injury already exists" to render application of the exclusion a "question

4  of law."

5         Everest is correct that the workers' compensation exclusion in the policy's employer's liability

6  portion is unambiguous.  Like the exclusion in *Transamerica*, the policy's workers' compensation

7  exclusion clearly indicates that when workers' compensation liability exists, no coverage arises under the

8  policy's employer's liability portion to limit Valley Flooring to defense and indemnity for the workers'

9  compensation claim.  No competing interpretation of the exclusion appears from the record, and Everest

10  has met its burden that the exclusion is unambiguous and applies to the Lopez action.

11                      ***Intentional And Knowing Exclusions***

12         The policy provides no coverage for "bodily injury intentionally caused or aggravated by you" and

13  "bodily injury to an employee while employed in violation of law with your actual knowledge or the

14  actual knowledge of any of your executive officers."  Everest argues that the intentional and knowing

15  conduct exclusions unambiguously apply to the Lopez action.

16         Everest points to *Reagen's Vacuum Truck Service, Inc. v. Beaver Ins. Co.*, 31 Cal.App.4th 375,

17  388, 37 Cal.Rptr.2d 89 (1995), where the California Court of Appeal addressed a "bodily injury

18  intentionally caused or aggravated" exclusion in an employer's liability portion of a workers'

19  compensation and employer's liability policy.  The California Court of Appeal determined that the

20  exclusion "specifically excluded" coverage: "When the policy language clearly provides no basis for

21  coverage, there can be no reasonable expectation of a defense." *Reagen's Vacuum*, 31 Cal.App.4th at

22  388, 37 Cal.Rptr.2d 89.

23         Everest notes that the intentional conduct exclusions in the policy and *Reagen's Vacuum* are

24  identical and "clearly" provide no coverage for intentional acts.  Everest attempts to invoke the

25  unambiguous knowing exclusion as to an employee's bodily injury while employed in violation of law

26  with the insured's actual knowledge.  Everest argues that since the exclusions are unambiguous, the only

27  remaining legal question is whether they apply to the Lopez action.

28         In the absence of Valley Flooring's timely opposition, there appears to be no dispute over the

10

Case 1:08-cv-01695-LJO-GSA   Document 19   Filed 04/14/09   Page 11 of 16

1  clarity of the intentional and knowing exclusions.  Although the intentional and knowing exclusions may

2  be unambiguous, an issue remains whether they are invoked to preclude coverage for the Lopez issue and

3  will be discussed below.

**Duty To Defend**

5      An insurer has a duty to defend an insured if the insurer becomes aware of, or if the third party

6  lawsuit pleads, facts giving rise to the potential for coverage under an insuring agreement.  *Waller*, 11

7  Cal.4th at 19, 44 Cal.Rptr.2d 370.  Although an insurer's duty to defend is broader than its duty to

8  indemnify, "where there is no possibility of coverage, there is no duty to defend." *Fire Ins. Exchange*

9  *v. Abbott*, 204 Cal.App.3d 1012, 1029, 251 Cal.Rptr. 620 (1988).  Determination "whether the insurer

10 owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint

11 with the terms of the policy.  Facts extrinsic to the complaint give rise to a duty to defend when they

12 reveal a possibility that the claim may be covered by the policy." *Waller*, 11 Cal.4th at 19, 44 Cal.Rptr.2d

13 370; *see Montrose Chem. Corp. of Cal. v. Superior Court*, 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467 (1993)

14 ("The duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the

15 insurer from any source.")

16     Although broad, the duty to defend is not unlimited and "is measured by the nature and kinds of

17 risks covered by the policy." *Waller*, 11 Cal.4th at 19, 44 Cal.Rptr.2d 370.  "To prevail, the insured must

18 prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such*

19 *potential*.  In other words, the insured need only show that the underlying claim *may* fall within policy

20 coverage; the insurer must prove it *cannot*." *Montrose Chemical*, 6 Cal.4th at 300, 24 Cal.Rptr. 467

21 (italics in original).  An insurer "must defend a suit which potentially seeks damages within the coverage

22 of the policy."  *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104 (1966).

23     With these standards in mind, this Court turns to Everest's arguments that is owes no duty to

24 defend.

***Conspicuous Exclusions***

26     Everest argues that its exclusions are valid in that they are "conspicuous, plain and clear."

27     "The insurance company's obligation to provide coverage can be limited only by exclusions

28 phrased in language which clearly and unmistakably communicates to the insured the specific

11

1  circumstances under which the expected coverage will not be provided." *Reserve Insurance Co. v.*

2  *Pisciotta,* 30 Cal.3d 800, 809, Cal.Rptr. 628 (1982).  Courts have invalidated exclusions as inconspicuous

3  where not in a section labeled exclusions and placed on an overcrowded page, *Cal-Farm Ins. Co. v. TAC*

4  *Exterminators, Inc.,* 172 Cal.App.3d 564, 577, 218 Cal.Rptr. 407 (1985); *Miller v. Elite Ins. Co.,* 100

5  Cal.App.3d 739, 752, 161 Cal.Rptr. 322 (1980); *Schmidt v. Pacific Mut. Life Ins. Co.,* 268 Cal.App.2d

6  735, 740, 74 Cal.Rptr. 367 (1969), or in a section labeled "'General Limitations'" but in a "'dense pack'"

7  format, *Ponder v. Blue Cross of Southern California,* 145 Cal.App.3d 709, 722, 193 Cal.Rptr. 632 (1983),

8  or hidden in a subsequent section of the policy bearing no clear relationship to the insuring clause and

9  concealed in fine print, *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 273, 54 Cal.Rptr. 104 (1966)).

10  However, the California Supreme Court held an exclusion clause conspicuous as a matter of law

11  when it was found in a section under the bold face heading "Exclusions," in printing the size and intensity

12  identical to the rest of the policy. *National Ins. Underwriters v. Carter,* 17 Cal.3d 380, 384-385, 131

13  Cal.Rptr. 42 (1976).

14  In addressing exclusions similar to those at issue here, the California Court of Appeal explained:

15  The exclusions clauses at issue are found under a section labeled "Exclusions" in bold
face; are of identical size and intensity of the rest of the policy; and are divided into two

16  columns on the page so as not to be a dense pack. But in any event, exclusion clauses do
not fail merely because of the density of verbiage. (*Ponder v. Blue Cross of Southern*

17  *California, supra.*, 145 Cal.App.3d at p. 722.) Therefore, as a matter of law, we find the
exclusions conspicuous.

18

19  *Cal-Farm Ins. Co. v. TAC Exterminators, Inc.*,  172 Cal.App.3d 564, 578, 218 Cal.Rptr. 407 (1985).

20  Everest points out that the policy's exclusions are in the same print size, intensity and density as

21  the remainder of the policy and are under a bold "Exclusions" heading.

22  The applicable exclusions are conspicuous, and there is no issue as to their location, appearance

23  and accessability.  The applicable exclusions are not subject to invalidation as inconspicuous.

### *Workers' Compensation Exclusion*

25  Everest argues that the policy's workers' compensation exclusion precludes coverage for the

26  Lopez action "since Mr. Lopez is eligible for workers' compensation benefits for his injury."

27  An employer's liability policy "is *not* a general liability policy providing coverage for injuries to

28  members of the general public; instead it provides coverage to employers for those injuries to their

12

1  employees not covered by workers' compensation." *Producers Dairy*, 41 Cal.3d 903, 917, 226 Cal.Rptr.

2  558 (italics in original).  An employer's liability policy "protects employers against lawsuits by employees

3  who are injured in the course of employment, but whose injuries are not compensable under the workers'

4  compensation laws" and "indemnifies employers against civil suits brought by employees."  *La Jolla*

5  *Beach*, 9 Cal.4th 27, 36, 36 Cal.Rptr.2d 100.  Workers' compensation and employers' liability coverages

6  under a joint policy are "mutually exclusive."  *Producers Dairy*, 41 Cal.3d at 916, 226 Cal.Rptr. 558.

7        An exclusion for "any obligation imposed by a workers' compensation . . . law" is interpreted to

8  exclude claims eligible for workers' compensation benefits for the same injury.  *See Culligan v. State*

9  *Comp. Ins. Fund,* 81 Cal.App.4th 429, 438, 440, 96 Cal.Rptr.2d 656 (2000).  Such language "clearly

10  indicates that where workers' compensation liability exists, there is no coverage under the employers'

11  liability portion of the Policy, thereby affording only defense and indemnity of the workers' compensation

12  claim."  *Transamerica*, 29 Cal.App.4th at 1715, 35 Cal.Rptr.2d 259.  To invoke coverage under workers'

13  compensation and employer's liability policy portions would permit "dual recovery [which] is contrary

14  to the concept of employers' liability insurance and violative of the statutory policy of the state."

15  *Reagen's*, 31 Cal.App.4th at 384, 37 Cal.Rptr.2d 89.  "This dual recovery under a single policy is contrary

16  to both the plain meaning of the policy itself, and the concept of employers' liability insurance as it is

17  commonly understood."  *Producers Dairy*, 41 Cal.3d at 917, 226 Cal.Rptr. 558.

18        Everest notes that its has paid Mr. Lopez workers' compensation benefits and that the policy's

19  employer's liability portion excludes coverage for "any obligation imposed by a workers compensation

20  . . . or any similar law."   As such, Everest concludes that the "plain meaning" of the workers'

21  compensation exclusion precludes coverage for the Lopez action.  "The 'obligation imposed' by the

22  workers' compensation law is readily understood to mean the obligation as an employer, under workers'

23  compensation, to provide benefits. That inchoate obligation exists whether or not an employee actually

24  chooses to seek benefits."  *Culligan,* 81 Cal.App.4th 439, 440, 96 Cal.Rptr.2d 656 (workers'

25  compensation exclusion eliminates duty to defend where there is a potential for workers' compensation

26  liability and the injured employee seeks no workers' compensation benefits).

27        Everest points out that the sole basis for the Lopez action is section 4558, which Everest

28  characterizes as "part of the overall workers's compensation scheme" although an exception to the

1  exclusive remedy of workers' compensation for employment injury.  Everest notes that California Labor

2  Code section 3600(b) grants an employer a credit toward a section 4558 judgment or settlement of

3  workers' compensation benefits paid to an employee or his/her beneficiaries.  Everest concludes that

4  section 4558 "functions within California's workers' compensation laws and any claims made pursuant

5  to it should be excluded from coverage" by the workers' compensation exclusion under which there is

6  no coverage of the Lopez action.

7         This Court agrees that the workers' compensation exclusion in the policy's employer's liability

8  portion precludes coverage for the Lopezes' section 4558 claims which arise as obligations imposed by

9  workers' compensation law.  Mr. Lopez' injury is compensable under workers' compensation laws to

10 invoke coverage under the policy's workers' compensation portion.  With workers' compensation liability

11 for his claim, no coverage arises under the policy's employer's liability portion.  To find otherwise would

12 grant dual recovery contrary to the policy's unambiguous language and the concept of employer's liability

13 insurance, *see Producers Dairy*, 41 Cal.3d at 917, 226 Cal.Rptr. 558, and "violative" of California policy,

14 *see Reagen's*, 31 Cal.App.4th at 384, 37 Cal.Rptr.2d 89.  Valley Flooring's lack of timely opposition

15 suggests that it concedes that the section 4558 claims are excluded.

16                                    ***Intentional And Knowing Exclusions***

17        Everest further contends it lacks a duty to defend in that the policy's intentional and knowing

18 exclusions preclude coverage for the Lopez action which is based on "knowing" conduct to violate

19 section 4558.  Everest relies on *Reagen's*, 31 Cal.App.4th at 388, 37 Cal.Rptr.2d 89, where the California

20 Court of Appeal denied coverage under an employer's liability portion of a workers' compensation and

21 employer's liability policy due to an intentional cause or aggravation exclusion:

22      Bodily injury intentionally caused or aggravated by the insured is specifically excluded
     from coverage. [Employee's] complaint alleged intentional aggravation of injury. When
23      the policy language clearly provides no basis for coverage, there can be no reasonable
     expectation of a defense.
24

25        Everest notes that the policy's intentional conduct exclusion is identical to the exclusion at issue

26 in *Reagen's* to exclude "claims requiring intentional conduct as an essential element."  Everest further

27 argues that the policy's knowing exclusion applies in that the Lopezes' section 4558 claims "require, as

28 an essential element, that Valley Flooring have acted knowingly, including both knowing removal or

1 failure to install the point of operation guard and knowing that there is a possibility of serious injury or

2 death, in violation of that law."

3        Everest fails to persuade that the intentional and knowing exclusions apply to the Lopez action,

4 even if they are unambiguous. The knowing exclusion addresses injury to an employee who is "employed

5 in violation of the law." Nothing in the record suggests that Mr. Lopez is an illegal employee. The

6 intentional exclusion addresses injury "intentionally caused or aggravated" by Valley Flooring. Everest

7 fails to explain or demonstrate that the alleged absence of an operation guard equates to intentional

8 conduct to invoke the exclusion.

9                                    **Bad Faith**

10        Everest contends that Valley Floor's bad faith counterclaim is barred in the absence of "potential

11 coverage" under the policy for the Lopez action. Everest argues that there is no breach of the implied

12 covenant of good faith and fair dealing without invocation of the policy's employer's liability benefits.

13        "There is an implied covenant of good faith and fair dealing in every contract that neither party

14 will do anything which will injure the right of the other to receive the benefits of the agreement."

15 *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958). The primary test of

16 breach of the implied covenant of good faith and fair dealing "is whether the insurer withheld payment

17 of an insured's claim unreasonably and in bad faith." *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136,

18 1151, 271 Cal.Rptr. 246 (1990). If benefits are withheld for "proper cause," the implied covenant is not

19 breached. *Love*, 221 Cal.App.3d at 1151, 271 Cal.Rptr. 246; *Cal. Shoppers Inc. v. Royal Globe Ins. Co.*,

20 175 Cal.App.3d 1, 54-55, 221 Cal.Rptr. 171 (1985). To establish breach of the implied covenant, an

21 insured must demonstrate that: (1) benefits due under the policy were withheld; and (2) the reason to

22 withhold benefits was unreasonable or improper. *Love*, 221 Cal.App.3d at 1151, 271 Cal.Rptr. 246

23        "It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms

24 of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing

25 because the covenant is based on the contractual relationship between the insured and the insurer."

26 *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 36, 44 Cal.Rptr.2d 370 (1995); *see also Cal. State*

27 *Auto. Assn. Inter-Ins. Bureau v. Superior Court*, 184 Cal.App.3d 1428, 1433, 229 Cal.Rptr. 409 (1986)

28 (no bad faith award available "without first establishing coverage exists").

1        The workers' compensation exclusion of the policy's employer's liability portion applies to

2   preclude coverage for the Lopez action.  Everest has defended and indemnified Mr. Lopez' workers'

3   compensation claim and has withheld for proper cause coverage for the Lopez action.  Valley Flooring

4   is not entitled to benefits under the policy's employer's liability portion, and Everest has not unreasonably

5   withheld benefits under that portion of the policy.  In the absence of coverage for the Lopez action,

6   Everest is not subject to Valley Flooring's bad faith counterclaim.

7                  **CONCLUSION AND ORDER**

8        For the reasons discussed above, this Court GRANTS summary adjudication that Everest owes

9   no duty to defend the Lopez action and thus has not breached the policy's implied covenant of good faith

10  and fair dealing as to a duty to defend the Lopez action.

11       IT IS SO ORDERED.

12  **Dated:   April 14, 2009**                        **/s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28